IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION



EOD

02/13/2006

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DANIEL BUFFIN** | § | |
| xxx-xx-4030 | § | Case No. 05-20221 |
| **and PAMELA A. BUFFIN** | § | |
| xxx-xx-7958 | § | |
| 923 Mt. Pleasant Rd., Hallsville, TX 75650 | § | |
| | § | |
| Debtors | § | Chapter 13 |

## MEMORANDUM OF DECISION[1]

This Court has heard and considered the "Debtors' Objection to Proof of Claim #1 Filed by 21st Mortgage Company (sic)" filed by the Debtors, Daniel and Pamela Buffin ("Debtors") in the above-referenced case, and the response and objection thereto filed by 21st Mortgage Corporation (the "Claimant"). Upon conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

### Background

The Debtors became indebted to the Claimant pursuant to a promissory note originally executed to a predecessor-in-interest of the Claimant by one of the Debtors,

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] This Court has jurisdiction to consider the Debtors' objection pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

Daniel Buffin, on April 24, 1995.[3]  The indebtedness is secured by a purchase-money security interest in a 1995 Patriot (Southridge) 26x44 Limited Edition mobile home  (the "Collateral"),[4] actually held by the Claimant's principal.[5]   In part to address an arrearage which had arisen under the Debtors' contract with the Claimant, the Debtors, on May 2, 2005, filed a petition for relief under Chapter 13 of the Bankruptcy Code.  The Claimant thereafter filed its proof of claim #1 on May 20, 2005, in the wholly secured amount of $41,450.88.  The Debtors subsequently filed their objection to the allowance of the claim as filed and asserting a valuation of the Collateral at only $7,000.00.  The sole issue presented to the Court relates to the value of the Collateral.

The Debtors, as the owners of the Collateral, proffered a collateral value of $15,000.00 — more than doubling the value originally asserted in their objection — based upon the appraisal testimony of Rusty Asaff, a local Marshall appraiser.  The Claimant offered the appraisal testimony of Ms. Lynn Browder who valued the Collateral at $20,440.00 based upon NADA valuation information.  In order to engage in a closer

---

[3] Claimant's Exhibit A.

[4] There is a dispute between the parties as to whether the mobile home is 26' or 28' long. However, the "Texas Original Certificate of Ownership – Manufactured Home Document of Title" issued by the Texas Department of Licensing and Regulation on May 18, 1995 lists the home as a 26' x 44.  Though the retail installment contract appears to describe the home as a 28' x 48' unit,  the sales contract does not govern the proper identification of the Collateral  — the certificate of title does — and the parties are thus bound by the Certificate of Title as to the identification of the Collateral.

[5] Claimant is actually the agent for Ford Consumer Finance Company, Inc., but has full power to act as a creditor in this proceeding under the "Continuing Power of Attorney" admitted as Claimant's Exhibit C, and the proof of claim is filed under the name of the Claimant.

examination of the opposing appraisals and other factual discrepancies, the Court took the matter under advisement at the conclusion of the hearing.

## Discussion

A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim, FED. R. BANKR. P. 3001(f), and is deemed allowed unless a party in interest objects under 11 U.S.C. §502(a). A proof of claim, however, does not qualify for that *prima facie* evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules. *See First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J Dairy, Inc.)*, 112 B.R. 297, 300 (W.D. Ark. 1989). Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:

> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c).

Likewise, if a creditor claims a security interest in property of the debtor, Rule 3001(d) requires the creditor to accompany his proof of claim with evidence that the creditor perfected a security interest.

Hence, the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with FED. R. BANKR. P. 3001 by alleging facts in

the proof of claim that are sufficient to support the claim. If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *See Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, *see In re Lenz*, 110 B.R. 523, 525 (D. Colo. 1990); by the presentation of legal arguments based upon the contents of the claim and its supporting documents, *see In re Circle J Dairy*, 112 B.R. at 300; or by the presentation of pretrial pleadings, such as a motion for summary judgment, in which evidence is presented to bring the validity of the claim into question, *see In re Frontier Airlines, Inc.*, 112 B.R. 395, 399-400 (D. Colo. 1990). If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *See In re Consumers Realty & Dev. Co.*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

  Since the Claimant filed a claim in compliance with the Federal Rules of Bankruptcy Procedure, including the attachment of a copy of the promissory note upon

which its claim is allegedly based, the claim is entitled to *prima facie* validity. To rebut that effect, the Debtors essentially alleged that the replacement value of the mobile home was far less than the $41,450.88 asserted in the claim and the evidence submitted by the Debtors at the hearing was clearly sufficient to bring the legitimacy of the secured claim into question and to overcome the *prima facie* validity of such claim. Thus, it becomes incumbent upon the Claimant to establish the validity and amount of its claim by a preponderance of the evidence.

The Claimant's expert, Ms. Browder, inspected the Collateral and prepared a written appraisal report based upon a National Appraisal System format — a valuation format developed by National Appraisal Guides, Inc. — which is also the publisher of the N.A.D.A. MANUFACTURED HOUSING APPRAISAL GUIDE (hereafter referenced as the "NADA Guide"). As opposed to the "bluebook"-type values offered in the NADA Guide, the NAS format seeks to equip an appraiser to make a more particularized valuation of a mobile home based upon an actual physical inspection of the unit. Ms. Browder's report is a product of such an inspection and it rigidly follows the perfunctory procedures imposed by the NADA Guide. The report presents a "base structure value" for the unit, which is then adjusted by location and by condition to reach a condition-adjusted value.[6] It then upwardly adjusts the condition-adjusted value for particular components of and

---

[6] The 103% location adjustment for Texas and the adjustment for a "poor" condition assessment of the unit is not in dispute.

accessories to the unit.[7]  There were no "community" adjustments made nor was any adjustment made for comparable sales.  Based upon her calculation of those various component values, Ms. Browder offered her appraisal of the unit at $20,440.00.

Mr. Asaff testified on behalf of the Debtors based upon his experience as a broker in the local area who is primarily employed by banks and real estate investors and who admittedly appraises mobile homes only about five to six times per year.  However, he did engage in a closer inspection of the Collateral than Ms. Browder and his opinion of $15,000.00 was affected not only by the dispute over the size of the Collateral, and adjusted comparable sales of similarly-sized units in the Marshall area, but by the extremely poor condition of the Collateral at issue which compelled a significant downward adjustment in value.  As supplemented without contradiction by the testimony of Mr. Buffin, the Collateral suffers from a severe compromise of the flooring in the kitchen and one of the baths, rotting wood and mildew occurring in and around the kitchen sink, numerous leaks in the roof which is disjointed between the two halves (and for which an upward adjustment was made in the Claimant's appraisal report), and an inoperable vent-a-hood system.  The Debtors assert that the depreciated condition of the Collateral was not adequately taken into account by the Claimant's appraisal and justifies

---

[7] This appraisal system has been previously criticized for failing to explain why standard metal roofing and standard aluminum siding commonly utilized in mobile homes are assessed as value-enhancing components, and not as basic components contemplated by the substantial "base structure value" given for a unit.

the establishment of a lower replacement value for the Collateral.[8]

It has been long recognized that "[v]aluation outside the actual market place is inherently inexact." *Rushton v. Comm'r*, 498 F.2d 88, 95 (5th Cir. 1974). *See also Boyle v. Wells (In re Gustav Schaefer Co.)*, 103 F.2d 237, 242 (6th Cir.), *cert. denied*, 308 U.S. 579, 60 S.Ct. 96, 84 L.Ed. 485 (1939) ["The valuation of property is an inexact science and whatever method is used will only be an approximation and variance of opinion by two individuals does not establish a mistake in either."]. Because the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses. *In re Coates*, 180 B.R. 110, 112 (Bankr. D.S.C. 1995) ["The valuation process is not an exact science and the court must allocate varying degrees of weight depending upon the court's opinion of the credibility of . . . [the appraisal] evidence."].[9] A bankruptcy court is not bound to accept the values in the parties' appraisals; rather, it may form its own opinion of the value of the subject property

---

[8] The valuation of collateral in this context seeks to determine its "replacement value." *Assoc. Commercial Corp. v. Rash*, 520 U.S. 953, 956, 117 S.Ct. 1879, 1882, 138 L.Ed.2d 148 (1997). While *Rash* might warrant further reductions in any projected retail price due to the fact that such price may reflect value of items, such as transportation and installation costs, which the Debtors in this instance are obviously not receiving, *see id.* at 1886, n.6., no additional evidence was brought to the Court to quantify a further downward adjustment and, thus, none will be imposed.

[9] In weighing conflicting appraisal testimony, courts generally evaluate a number of factors, including the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented. *In re Smith*, 267 B.R. 568, 572-73 (Bankr. S.D. Ohio 2001).

after considering all of the evidence presented. *In re Holcomb Health Care Svcs., L.L.C.,* 329 B.R. 622, 669 (Bankr. M.D. Tenn. 2004).

In weighing the evidence presented with the foregoing principles in mind, the Court finds the Debtors' evidence to be more compelling. The deteriorated condition of the Collateral, some of which was admittedly unknown to the Claimant's appraiser, demands a more serious deduction in value than that which was taken in the condition adjustment utilized in the Claimant's appraisal, and demands the elimination of any value enhancement for a disjointed and leaking roof. Further, the utilization of local comparable sales, even though adjusted for varying land values, compels greater credibility than a broader, statewide location adjustment which, in this instance, actually triggered a small "Texas upgrade" which clearly could not have been realized by this particular Collateral.

Therefore, based upon the evidence presented and for the reasons expressed herein, the Court concludes that the objection filed by the Debtors, Daniel and Pamela Buffin to the claim of 21st Mortgage Corporation must be sustained in part and denied in part and that claim #1 filed by 21st Mortgage Corporation is hereby allowed as a secured claim in the amount of $16,000, which the Court finds to be the replacement value of the Collateral, and the remaining amounts of such claim shall be allowed as a general unsecured claim. All other relief requested by any party is denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[10] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 2/13/2006

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[10] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.